(16 Misc. Rep. 309.)

In re CORNING FOUNDATION FOR CHRISTIAN WORK et al.

(Supreme Court, Special Term, Albany County.   March, 1896.)

CHARITIES—RIGHT TO "CHANCERY FUNDS."

The comptroller of the state will not be ordered, on the petition of charity hospitals, to transfer to them the fund consisting of unclaimed moneys in the hands of the court of chancery at the time it was abolished, to be held by petitioners subject to the order of the court, where petitioners do not seek a loan of the fund, but simply wish to hold it in place of the comptroller, subject to the order of the court, as they have no interest or property in such fund; and it is immaterial whether or not Laws 1895,

c. 818, directing the clerk of the court of appeals, who formerly had cus-
tody of such fund, to transfer it to the comptroller, to credit it to the
general fund of the state, is constitutional.

Application by the Corning Foundation for Christian Work in the
Diocese of Albany and others for an order directing the transfer
to them of the "chancery funds." Denied.

Barnwell R. Heyward, for petitioners.

T. E. Hancock, Atty. Gen., and G. D. B. Hasbrouck, Dep. Atty.
Gen., opposed.

CHESTER, J.   This is a motion made by the Corning Foundation
for Christian Work in the Diocese of Albany, the Albany City
Homœopathic Hospital and Dispensary, the Albany Hospital, and
St. Peter's Hospital, all of Albany, for an order directing the comp-
troller of the state to transfer what is known as the "Chancery
Funds," now in his possession, to the petitioners, in equal parts,
upon such security as the court shall direct, to be held by them sub-
ject to the order of the court for the payment of the whole or any
part thereof, with interest, to the lawful owners thereof.   These
four petitioners are domestic corporations of an eleemosynary or
charitable nature, and each conducts hospitals at Albany for the
furnishing of surgical and medical aid to the indigent, the expense
of which is supplied by those charitably disposed.   It is alleged
that the petitioners are owners of real estate worth $200,000 over
all incumbrances; that their running expenses are large, and contin-
ually increasing; that they are unable to furnish sufficient accom-
modations for those in need of their assistance; and that they de-
sire to procure a loan of these funds, to enable them to enlarge their
buildings, and procure the necessary and proper conveniences or ap-
pliances for their work.   The chancery funds in question consist of
property, securities, and moneys, amounting to the sum of about
$175,000, as stated in the petition, which represents what is left of
the surplus moneys paid into court, and unclaimed deposits on hand
at the time of the abolition of the court of chancery in 1846.   The
funds were held by the clerk of the court of appeals, pursuant to sec-
tion 5, c. 277, Laws 1848, until about the middle of May, 1894, when
he transferred their possession to the comptroller, pursuant to chap-
ter 135, Laws 1894.   The last-mentioned act was passed March 15,
1894, and provides:

"That the clerk of the court of appeals shall transfer to the comptroller of
the state all the moneys, securities and real estate which he now holds, or which
he has now in his custody, as part of the funds and property formerly under
the control and in the possession of the court of chancery, or in any manner
appertaining thereto.   The comptroller shall give a receipt to said clerk for
such moneys, securities and evidences of title, and thereupon the comptroller
shall be vested with the same possession of such property as is now vested
in the clerk of the court of appeals."

By chapter 818, Laws 1895, it is provided that:

"The comptroller shall, as soon as it may be practicable, sell or otherwise
convert into cash the securities in which the fund known as the 'Chancery
Fund' is invested, at their fair market value; and the proceeds of such sale or
conversion shall, as received, be credited to the general fund, and deemed a

part thereof, and all moneys on deposit to the credit of such fund, or which may be hereafter received for interest or otherwise, shall, in like manner, be credited to the general fund, and be deemed a part thereof. The treasurer shall pay from such fund the amount due any person as owner of a portion thereof, upon the warrant of the comptroller. The comptroller shall draw his warrant for such sum upon presentation to him of an order made by a. court of competent jurisdiction, after due notice to said comptroller."

The intent of the act of 1895, above cited, is, probably, to convert the entire fund to the uses of the state, leaving the state liable, however, to pay from its general fund the amount which may be found due to any person as the owner of a portion thereof, upon the order of a court of competent jurisdiction, after notice to the comptroller. The petitioners concede that, if the act of 1895 can be sustained, their application cannot be granted; but they claim that the act is unconstitutional and void, for the reason, among others, that it appropriates private property to public use, without due process of law, and does not, therefore, stand in the way of the relief they seek. They also claim that under a provision of section 6, art. 6, of the constitution of 1846, which is retained in section 1, art. 6, of the constitution of 1894, and under section 71, c. 280, of the judiciary act of 1847, the supreme court still has jurisdiction over the funds, and has power to grant this motion.    Under the view I entertain of the matter, it is not necessary on this motion to determine the constitutionality of the act in question.    If we assume, for the sake of the argument, that the act of 1895 is unconstitutional, as the petitioners contend, and that the funds are in the possession of the comptroller, whether lawfully or not, the same as they had formerly been in the possession of the clerk of the court of appeals, and if we also assume that this court still has jurisdiction to direct as to the care, investment, and control of the funds, then the order asked for here is one resting in the discretion of the court.    The attorney general claims this, and the petitioners concede it.    Should the court exercise this discretion in favor of these petitioners, and grant this application? It seems to me, clearly, not.

The petitioners ask the court to make them the depositaries of the funds in question, in equal proportions.    They are not seeking to procure a loan or a direction that the comptroller make an investment of these moneys, or a portion of them, upon a mortgage upon their real estate, to be repaid, with interest, at the maturity of the mortgage.    They simply want to hold the fund in the place of the comptroller, subject to the order of the court, if any claimants to the fund, or any part of it, should ever appear to invoke such order, and with the expectation that no such claimants will ever appear, and that, therefore, the moneys may be applied perpetually to their uses.    This was expressly claimed upon the argument; and the course was justified by the fact that whatever benefit would be derived from the use by the petitioners of these funds would go to alleviate the sufferings of the sick and needy.    No one will question the commendable character of the work carried on by the petitioners. The institutions maintained by them are worthy not only of liberal public support, but of the aid of all, and especially of charitably disposed persons.    Notwithstanding the humane and charitable char-

acter of the work of these institutions, they are strangers to these funds. They have no interest or property in the moneys in question. They have no better standing to ask the court to compel the comptroller to transfer this large fund to them than have the hundreds of other equally deserving eleemosynary and charitable institutions throughout the state to ask like relief. The only parties having a legal right to move the court with reference to these chancery funds are the owners, now unknown, or their legal representatives, and the state,—the custodian. The state is lawfully in possession of these funds, and may properly defend its possession against every one but the owners. When the court is asked, therefore, to permit a conversion of these funds to a charitable use, no matter how worthy the object may be, it is proper for the state not only to question the power of the court to so direct, but to defend its possession as against parties having no interest. The Code of Civil Procedure does not provide that the court may be set in motion by parties having no interest (sections 446–460); and, until it·is, it should not, in my opinion, exercise its discretion against the state, which has managed and preserved these funds for nearly 50 years, since the court of chancery was abolished, but rather should exercise it in favor of the state, and in deference to the legislative will, as expressed in the act of 1895, above quoted, whether that act is unconstitutional or not. If these moneys have been abandoned to the state by their owners, as now seems probable, they are more properly the subject of legislative than of judicial disposal. The motion is therefore denied.

Motion denied.